1
2
3
4
5

6                     UNITED STATES DISTRICT COURT

7                   SOUTHERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| 9 JOHN CESARIO, | Case No.:  23-cv-1803-WQH-BLM |
| 10                          Plaintiff, | **ORDER** |
| 11 v. | |
| 12 BIOCEPT, INC.; CBIZ, INC.; MICHAEL W. NALL; CBIZ | |
| 13 CPAS, P.C.; BRUCE E. GERHARDT; COOLEY LLP; | |
| 14 BRUCE A. HUEBNER; JASON MCCARTHY; MARSHA A. | |
| 15 | |
| 16 CHANDLER; LIPPERT/HEILSHORN & | |
| 17 ASSOCIATES, INC.; JODY CAIN; CHARLES BAIR; | |
| 18 TIMOTHY C. KENNEDY; LYLE ARNOLD; MAXIM | |
| 19 | |
| 20 GROUP LLC; MICHAEL W. BROWN; AEGEA | |
| 21 BIOTECHNOLOGIES INC.; CBIZ ADVISORS, LLC; | |
| 22 STEPHAN FANUCCI; IVOR ROYSTON; DAVID HALE; | |
| 23 | |
| 24 MICHAEL RABINOWITZ; PAUL LAROSA; TIPTON | |
| 25 EVANS; and ANDREW ROSEN, | |
| 26                          Defendants. | |

27
28

HAYES, Judge:

The matters before the Court are the Motions to Dismiss filed by several Defendants. (ECF Nos. 167, 175, 176, 177, 178, 180, 181, 183.)

## I.    PROCEDURAL BACKGROUND

On September 29, 2023, Plaintiff John Cesario ("Plaintiff"), proceeding *pro se*, initiated this action by filing a Complaint. (ECF No. 1.)

On October 20, 2023, Plaintiff filed a First Amended Complaint ("FAC"). (ECF No. 4.) Several Defendants filed motions to dismiss the FAC. (ECF Nos. 8, 9 & 20.)

On January 24, 2024, two days after the motions to dismiss the FAC were fully briefed, Plaintiff filed a Motion to File a Second Amended Complaint. (ECF No. 52.) On April 2, 2024, the Court granted Plaintiff's Motion to File a Second Amended Complaint and denied the then-pending motions to dismiss the FAC as moot. (ECF No. 82.)

On April 10, 2024, Plaintiff filed the Second Amended Complaint ("SAC"). (ECF No. 84.) Several Defendants filed motions to dismiss the SAC. (ECF Nos. 91, 92, 93, 94, 95, 98, 100 & 120.) On February 18, 2024, the Court granted these motions and dismissed the SAC without prejudice as to those Defendants. (ECF No. 163.)

On March 11, 2025, Plaintiff filed the operative Third Amended Complaint ("TAC"). (ECF No. 164.) The TAC names twenty-one Defendants:

      1.    Biocept, Inc. ("Biocept")[1]

---

[1] Biocept is currently undergoing Chapter 7 bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). *See Tiedemann v. von Blanckensee*, 72 F.4th 1001, 1007 (9th Cir. 2023) (recognizing that courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (quoting *Kipp v. Davis*, 971 F.3d 939, 945 n.2 (9th Cir. 2020))). The Bankruptcy Court's docket reflects that an automatic stay is in effect as to litigation against Biocept. *See In re Biocept, Inc.*, No. 1:23-bk-11731, ECF No. 3 at 1 (Bankr. D. Del. Oct. 16, 2023); *see also* 11 U.S.C. § 362(a)(1) (providing that an automatic stay operates as to "the commencement or continuation, including the issuance or employment of process, of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] proceeding"). The present action commenced on September 29, 2023, before the commencement of Biocept's bankruptcy proceedings on October 13, 2023. *See In re Biocept, Inc.*, No. 1:23-bk-11731, ECF No. 1 (Bankr. D. Del. Oct. 13, 2023). Accordingly, pursuant to 11 U.S.C. § 362(a)(1), the present action is currently stayed as to Biocept only. *See In re Silver*

2

2.   CBIZ Inc. ("CBIZ")

3.   CBIZ CPAs P.C. ("CBIZ CPAs")[2]

4.   Aegea Biotechnologies Inc. ("Aegea")

5.   Michael W. Nall ("Nall")

6.   Timothy C. Kennedy ("Kennedy")

7.   Michael W. Brown ("Brown")

8.   Lyle Arnold ("Arnold")

9.   David F. Hale ("Hale")

10.  Marsha A. Chandler ("Chandler")

11.  Bruce E. Gerhardt ("Gerhardt")

12.  Ivor Royston ("Royston")

13.  Bruce A. Huebner ("Huebner")

14.  Charles Bair ("Bair")

15.  Jody Cain ("Cain")

16.  Lippert/Heilshorn & Associates, Inc. ("LHA")

17.  Cooley LLP ("Cooley")

18.  Maxim Group LLC ("Maxim")

19.  Jason McCarthy ("McCarthy")

20.  CBIZ MHM LLC ("CBIZ Advisors")[3]

21.  Steven Fanucchi ("Fanucchi")

---

*State Broad., LLC*, BAP No. NV-23-1111-NFB, 2024 WL 583088, at *4 (B.A.P. 9th Cir. Feb. 13, 2024) ("Nothing in the express language of § 362(a) extends the automatic stay to non-debtors. The automatic stay protects only the debtor, the debtor's property, and the property of the debtor's bankruptcy estate. It does not protect the debtor's owners, affiliates, or co-obligees." (internal citation omitted)).

[2] In the SAC, Plaintiff named "Mayer Hoffman McCann" as a Defendant. (ECF No. 84 at 11–12.) On August 26, 2024, Mayer Hoffman filed a Notice of Name Change, informing the Court and parties that it "has changed its name to CBIZ CPAs P.C." (ECF No. 160 at 2.)

[3] In its Motion to Dismiss the TAC, the moving parties caption their motion: "Defendants CBIZ, Inc. and CBIZ Advisors, LLC's (*formerly CBIZ MHM, LLC*) Notice of Motion and Motion to Dismiss . . ." (emphasis added). (ECF No. 177 at 1.) The Court accordingly refers to this party as CBIZ Advisors, LLC.

(TAC at 9–11.) The TAC also purports to state claims against a "former Biocept board member[]" named "Wilson."[4] *Id.* at 4. The TAC does not adequately identify this person, and the Court finds that Wilson is not a properly named Defendant in this case.

### A. Moving Defendants

Defendants Aegea, Bair, CBIZ, CBIZ CPAs, CBIZ Advisors, Cooley, Gerhardt, Huebner, Kennedy, LHA, Maxim, McCarthy, and Nall filed Motions to Dismiss the TAC and Requests for Judicial Notice. (ECF Nos. 167, 175, 177, 176, 178, 179, 180, 181, 182, 183.) Plaintiff filed Responses to the Motions to Dismiss. (ECF Nos. 173, 185, 186, 187, 188, 189, 190.) Defendants filed Replies in Support of the Motions to Dismiss. (ECFs No. 174, 191, 192, 193, 194, 195, 197.)

### B. Dismissed Defendants

On April 1, 2025, the Court issued an Order to Show Cause notifying Plaintiff that, pursuant to Federal Rule of Civil Procedure 4(m), the Court would dismiss this action with respect to Defendants Arnold, Brown, Cain, Chandler, Fanucchi, Hale, and Royston unless Plaintiff filed proof that service of the summons and TAC was timely effectuated, that service of the summons and TAC was not required, or that good cause existed for his failure to timely effect service. (ECF No. 171.) The docket reflects that Plaintiff did not file a response.

On May 21, 2025, the Court accordingly dismissed Plaintiff's claims against Arnold, Brown, Cain, Chandler, Fanucchi, Hale, and Royston. (ECF No. 184.)

## II. ALLEGATIONS IN THE THIRD AMENDED COMPLAINT

The TAC alleges that Plaintiff repeatedly traded Biocept shares after the company announced an agreement to develop a COVID-19 test and—because Biocept artificially inflated and deflated its share price—Plaintiff suffered financial losses during his trades.

---

[4] This person is not listed among the Defendants in the "Parties" portion of the TAC. (TAC at 9–11.) This person is listed, however, as a Defendant against whom "Claims for Relief" are stated. *Id.* at 57. The clearest indication of this person's identity is the description: "Biocept's Audit Committee Member Wilson." *Id.* at 40.

(TAC at 37, 54, 55.) Plaintiff specifically alleges that Biocept concealed its agreement with another company, Aegea, related to the development of a COVID-19 test until shortly before a meeting in which shareholders would vote on a reverse stock split, which caused a sharp increase in Biocept's stock price upon the announcement of the agreement and a decline following the reverse stock split. *Id.* at 37, 43.

### A.    Background on Biocept, Inc.

Biocept is a "molecular oncology diagnostics corporation." *Id.* at 9. Biocept "claimed to develop and sell lab assays to find rare tumor cells and tumor DNA in blood and cerebrospinal fluid. Biocept's core business was molecular oncology pre-screening, mostly through blood samples." *Id.* at 11.

Biocept's "first public stock offering was in 2014." *Id.* Biocept "sold 1,900,000 shares at $10.00 a share." *Id.* In the following years, Biocept's "heavy operating losses were funded through constant equity offerings. These offerings caused the outstanding shares to swell . . . to over a hundred million shares with the share price dropping into the pennies per share." *Id.* at 12.

"Each time Biocept's share price dropped below $1.00 for over 30 consecutive trading days, NASDAQ issued a deficiency notice. Biocept could extinguish the deficiency notice," if the corporation's "stock price closed over $1.00 a share for 10 straight days." *Id.* If Biocept failed to extinguish any such deficiency notice "within a year, [its] stock would be delisted from NASDAQ. Biocept avoided being delisted . . . by executing three reverse splits, which increased its price per share." *Id.*

On January 1, 2020, "Biocept's cash reserves were less than 9 million dollars." *Id.* "Biocept was burning through approximately 2 million dollars per month as 2020 began." *Id.* "Biocept's stock was trading at approximately [$0].70 in the first week of March." *Id.* at 13.

### B.    Biocept Seeks a Reverse Stock Split

"By January 2020, COVID-19 started to dominate the news. By the end of February 2020, worldwide stock markets were collapsing." *Id.* at 12. "Between December 2019 and

April 2020, Biocept sold approximately 100 million shares to institutional investors at discounted prices" to raise "17 million dollars." *Id.* at 13. "[F]or the first time in Biocept's history, it sold almost all the stock it had authorized to sell to the public." *Id.* at 6.

On April 20, 2020, "Biocept filed a preliminary proxy with the [Securities and Exchange Commission] (SEC)" that "sought approval for Biocept's [third] reverse split in [four] years." *Id.* at 15. "The votes were to be counted at Biocept's June 5th annual shareholder meeting." *Id.* In its 2020 proxy, Biocept reported that "the reverse split will improve the price level of [its] common stock so that [the corporation is] able to maintain compliance with the [NASDAQ] minimum bid price listing standard." *Id.* at 16.

Plaintiff alleges, however, that Biocept acted to intentionally maintain its closing share price below $1.00. *Id.* at 17. This low share price provided Biocept with continuing cause to seek approval from its shareholders for the reverse stock split, which "was needed to reduce the [number of] authorized shares so that Biocept [could issue and sell new shares] to fund[] its operational losses, which included large executive compensation packages." *Id.* at 49.

### C.    Biocept Conceals an Agreement to Maintain Low Stock Price

On June 3, 2020, "Biocept and Aegea executed an agreement to co-develop a novel new PCR test . . . that purported to be more accurate than other PCR tests and could differentiate different strains of COVID-19." *Id.* at 20. Biocept "did not file a Supplemental Proxy notice informing shareholders of the [agreement], as legally required." *Id.* at 31. Biocept instead "planned to announce the [agreement] after the reverse split was approved at the June 5th, 2020, annual shareholder meeting." *Id.*

6

On June 5, 2020, "shareholders voted down the reverse split [*sic*] proposal. . . ." *Id.* at 31.[5] On July 1, 2020, shareholders again "voted down the reverse split proposal." *Id.* at 32.[6]

"On July 13, 2020, Biocept issued a . . . proxy supplement with the SEC stating that 'the Board' encouraged shareholders to vote for the reverse split to maintain the $1.00 minimum bid." *Id.* "On July 16th, Biocept filed another proxy supplement with the SEC, again stating that the Board recommends that shareholders vote for the reverse split proposal. . . ." *Id.*

On July 16, 2020, Biocept issued a press release titled: "Leading Independent Proxy Advisory Firms ISS and Glass Lewis Both Support Biocept Proposal to Authorize the Reverse Split of Common Shares." *Id.* at 33. "In addition to the . . . July 16th press release, and the July 13th and 16th supplemental Proxy filings; [Biocept] also issued press releases on June 5th, June 22nd, June 24th, June 30th, August 3rd, and August 4th, all of which failed to disclose the [agreement with Aegea]." *Id.* at 34. Biocept also filed a Form 8-K with the SEC on June 5th and June 10th without disclosing the agreement. *Id.* at 34–35.

### D.    Biocept Announces the Agreement

On August 3, 2020, Plaintiff began purchasing shares of Biocept stock. *Id.* at 54, 63.

On August 5, 2020, "late day trading [of Biocept stock] swelled to 50 million shares, 30 times the previous day's trading. Next, at 6 p.m., [Defendant McCarthy] issued a price target of $6.00 on Biocept, nearly 800% higher than Biocept's closing price." *Id.* at 35.

On August 6, 2020, Biocept announced its agreement with Aegea to develop a "new Highly Sensitive PCR-based COVID-19 Assay Utilizing Patented Switch-Blocker PCR

---

[5] The TAC also includes a contradictory allegation that "[o]n June 5, 2020, the Annual Meeting was adjourned prior to voting on [the reverse stock split] to allow additional time for voting." (TAC at 33 (quoting Biocept's proxy supplement filed with the SEC on July 16, 2020).)

[6] As above, the TAC includes a contradictory allegation that "[o]n July 1, 2020, the Annual Meeting was again adjourned before voting on [the reverse stock split] to allow additional time for voting." (TAC at 33 (quoting Biocept's proxy supplement filed with the SEC on July 16, 2020).)

Technology." *Id.* at 35. The press release "did not contain the date of the agreement or the terms of the 'First Right of Refusal.'" *Id.* at 36.

On August 6, 2020, "Biocept's share price jumped from $0.70 to a high of $1.30." *Id.* at 37. Biocept's shares had not closed at a price greater than $1.00 since August 20, 2019. *Id.* "Biocept's daily trading volume on August 3rd and 4th averaged 1.6 million. On August 6th, trading volume exploded to 192 million shares, a record for Biocept." *Id.* at 36.

Plaintiff alleges that Biocept issued its press release on August 6, 2020 to (1) "manipulate the stock price and trading volume so that the [institutional investors] that bought 40 shares a few months earlier could sell at a profit and then vote for the reverse split" and (2) "prevent [its] closing share price from being over $1.00 for ten consecutive days before the August 18, 2020, annual meeting, where a fourth vote was being taken for the proposed reverse split." *Id.* The date of the press release resulted in a period of "only nine trading days" between the announcement and the subsequent shareholder meeting. *Id.* at 37. This period was not long enough for "Biocept to regain [NASDAQ] compliance organically" because of its increased share price. *Id.* "Had Biocept announced the [agreement] on or about June 3rd, 2020," the "reason Biocept gave for the reverse split" would have been "negated" because the corporation would no longer have been at risk of being delisted by the Nasdaq. *Id.* at 42.

On August 13, 2025, Biocept "filed its second quarter 10-Q report with the SEC" stating that: "On June 3, 2020, the Company announced entering into a development agreement with Aegea . . . ." *Id.* at 38, 40. Biocept made the same statement in its "third quarter 10-Q" filed with the SEC later in the same year.[7] *Id.* at 47

/ / /

---

[7] Plaintiff alleges that this is a misstatement because Biocept entered its agreement with Aegea on June 3, 2020 but did not issue an announcement related to the agreement until August 6, 2020. (TAC at 36, 51.) Plaintiff alleges that this misstatement was eventually corrected in Biocept's 10-K filed on April 4, 2021: "In June 2020, we entered into a development agreement with Aegea Biotechnologies, Inc." *Id.*

**E.**    **Shareholders Approve Reverse Stock Split; Share Price Declines**

On August 18, 2020, "Biocept shareholders . . . were allowed to vote to approve the reverse [stock] split." *Id.* at 41. Shareholders voted in favor of the reverse stock split. *Id.*

Shortly after the reverse stock split, "Biocept's stock price collapsed to $0.40." *Id.* at 43. Biocept "next approved massive option grants to the executive management team at what they assumed to be low stock strike prices." *Id.* at 44. "Biocept's share price never recovered, despite COVID-19 testing revenues rising and the announcement that they were developing a novel new COVID-19 vaccine." *Id.* at 55.

During the period from August 3, 2020 to December 1, 2020, Plaintiff repeatedly traded Biocept stock for a total loss of $197,213. *Id.* at 64–65.

**F.**    **Causes of Action**[8]

Plaintiff asserts six causes of action against Defendants Nall, Kennedy, Gerhardt, and Huebner (collectively, "Biocept Defendants"):[9] (1) common law fraud as defined by California Civil Code § 1572; (2) constructive fraud as defined by California Civil Code § 1573; (3) deceit as defined by California Civil Code §§ 1709 and 1710; (4) violations of California Corporations Code §§ 25400 and 25401; (5) breach of fiduciary duties; and (6) violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Securities Exchange Act") and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder. *Id.* at 57–62.

Plaintiff asserts two causes of action against Defendants Aegea, CBIZ, CBIZ CPAs, Bair, Cooley, and LHA (collectively, "Non-Biocept Defendants"): (1) aiding and abetting fraud; and (2) violations of Section 10(b) of the Securities Exchange Act and SEC Rule 10b-5 as "secondary actors." *Id.* at 58–61.

---

[8] Plaintiff also asserts claims against Biocept and the Dismissed Defendants but, in this section, the Court omits from its recitation those defendants against whom a claim cannot properly be asserted due to the previous dismissal of that defendant or, in the case of Biocept, pending bankruptcy proceedings.

[9] Plaintiff alleges that Defendants Nall, Gerhardt, and Huebner were "former Biocept board members" and that Defendant Kennedy was "Biocept's COO and CFO." (TAC at 4.)

## III.    DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Federal Rule of Civil Procedure 12(b)(6) "is proper only where there is no cognizable legal theory[,] or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). While a pleading "does not require 'detailed factual allegations,'" Federal Rule of Civil Procedure 8 nevertheless "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where a plaintiff alleges fraud or misrepresentation in a private securities-fraud lawsuit, the complaint "must [also] satisfy the dual pleading requisites of Federal Rule of Civil Procedure 9(b) and the [Private Securities Litigation Reform Act ('PSLRA')]." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012). Under Rule 9(b), a

23-cv-1803-WQH-BLM

complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The pleader must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation omitted).

### B. Biocept Defendants

Plaintiff asserts six causes of action against Biocept Defendants: (1) violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5; (2) fraud; (3) constructive fraud; (4) deceit; (5) violations of California Corporations Code §§ 25400 and 25401; and (6) breach of fiduciary duties. (TAC at 57–62.) Biocept Defendants contend, among other arguments, that the TAC should be dismissed because Plaintiff fails to meet the pleading requirements of Federal Rule of Civil Procedure 9(b) for all claims.

#### 1. Securities Exchange Act

The Securities Exchange Act and Rule 10b-5 "prohibit material misrepresentations or omissions in connection with the sale of any security." *In re Cloudera, Inc.*, 121 F.4th 1180, 1186 (9th Cir. 2024). "To state a federal securities fraud claim in violation of § 10(b), a plaintiff must show: '(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1032 (9th Cir. 2016) (quoting *Thompson v. Paul*, 547 F.3d 1055, 1061 (9th Cir. 2008)).

The first prong—material misrepresentation or omission—requires that "a plaintiff [] show the defendant made a statement that was 'misleading as to a material fact.'" *Matrixx*

*Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988)). "Falsity is alleged when a plaintiff points to defendant's statements that directly contradict what the defendant knew at that time." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018). "Even if a statement is not false, it may be misleading if it omits material information." *Id.* at 1008–09. "[A] misrepresentation or omission is material if there is a substantial likelihood that a reasonable investor would have acted differently if the misrepresentation had not been made or the truth had been disclosed." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). "Pure omissions are not actionable under Rule 10b–5(b)." *Macquarie Infrastructure Corp. v. Moab Partners, L. P.*, 601 U.S. 257, 258 (2024). However, "representations that state the truth only so far as it goes, while omitting critical qualifying information" are actionable. *Id.* (quoting *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 579 U.S. 176, 188 (1989)).

The heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to claims under the Securities Exchange Act that "allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim." *In re Cloudera*, 121 F.4th at 1186 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)). For each misrepresentation or omission, a plaintiff must explain "what is false or misleading about the purportedly fraudulent statement," *Davidson*, 889 F.3d at 964 (quotation omitted), and "why the statements were false or misleading at the time they were made." *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012).

Only the "maker" of an "untrue statement of a material fact" can be held liable under Section 10(b) and Rule 10b–5. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011). "For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 142. "One who prepares or publishes a statement on behalf of another is not its maker." *Id.* at 142. "Several district courts applying *Janus* have found that a corporate officer's position alone, without additional allegations as to the officer's

ability to control the contents of the statement at issue, does not suffice to render the officer a 'maker' of the statement." *Mandalevy v. Bofi Holding, Inc.*, No. 17cv667-GPC-KSC, 2021 WL 794275, at *6 (S.D. Cal. Mar. 2, 2021) (collecting cases). Although "a plaintiff need not plead that the defendant directly issued the allegedly misleading statement," the plaintiff "must plead sufficient facts to show that the defendant had the power and authority to control the content and issuance of the statement." *Id.* (citing *Janus*, 564 U.S. at 142).

The TAC claims that Biocept Defendants violated the Securities Exchange Act and SEC Rule 10b-5 in the course of a "fraudulent scheme." (TAC at 57.) Plaintiff alleges, principally, that Biocept Defendants "made false and misleading statements in the 2020 proxy [filing with the SEC]," "withheld material information from" shareholders, "[f]raudulently obtained shareholder approval" for the reverse stock split, and "[e]xecuted a fraudulent void reverse split." *Id.*

As a preliminary matter, the Court finds that Plaintiff's allegations in the TAC are substantially similar to those in the SAC. In its previous Order dismissing Plaintiff's SAC, the Court held that Plaintiff failed to sufficiently plead the "falsity and/or materiality of the alleged misrepresentations" attributable to Biocept Defendants. (ECF No. 163 at 28; *id.* at 25–27 (discussing claims related to "statements or filings that [Biocept Defendants] did not sign"); *id.* at 27–30 (discussing claims related to the omission of information about Biocept's agreement with Aegea); *id.* at 30–34 (discussing claims related to forward-looking statements); *id.* at 34–38 (discussing claims related to statements in SEC filings and earnings).) Plaintiff has not remedied this deficiency in the TAC. Plaintiff again alleges that Biocept Defendants: signed proxy statements filed with the SEC that included "material misstatements, omissions and half-truths," (TAC at 15–16, 32, 38, 47); omitted information about Biocept's agreement with Aegea in filed reports, *id.* at 26–29; and issued press releases to the public that likewise omitted information about the agreement between Biocept and Aegea, *id.* at 35–37.

The TAC does not introduce sufficient factual matter to adequately plead the falsity and materiality of statements made by Biocept Defendants related to its reverse stock split.

The TAC alleges that Biocept Defendants filed or issued signed statements related to the company's reverse stock split that were materially misleading because they "withheld that the primary reason . . . was to reduce the common shares outstanding" and allow the authorization of additional shares. (TAC at 15 (alleging that statements in the 2020 proxy filing were "half-truths"); *id.* at 49 ("The reverse split was needed to reduce the authorized shares so that Biocept had shares to sell to fund its operational losses.").) The TAC, however, includes language from Biocept's proxy filing with the SEC that describes the purposes of the reverse stock split: "maintain[ing] compliance with the Nasdaq minimum bid price listing standard," "generat[ing] interest in us among investors," and "provid[ing] a broader market for our common stock." *Id.* at 16. The TAC does not establish why more specific information about the likely issuance of new, authorized shares following the reverse stock split is "critical qualifying information" necessary to prevent a reader from being misled by the information included in Biocept's proxy filing. *Macquarie Infrastructure Corp.*, 601 U.S. at 263.

In *Alger Dynamic Opportunities Fund*, for example, the Court found that the plaintiff had met the pleading requirements of Rule 9(b) based on allegations that the defendant pharmaceutical company had publicly presented the results of clinical trials while "intentionally omitting crucial negative information that contradicted the studies' favorable findings" and, as a result, "created a misimpression in the market" that the U.S. Food and Drug Administration had agreed to evaluate the drug. *Alger Dynamic Opportunities Fund v. Acadia Pharms. Inc.*, 756 F. Supp. 3d 852, 863, 872 (S.D. Cal. Oct. 31, 2024). The TAC, conversely, alleges that Biocept Defendants harbored ulterior motives for the reverse stock split but does not sufficiently plead that they omitted crucial information necessary to avoid falsity in their SEC filings. The conclusory allegation that Biocept "intentionally withheld the primary reason" for the reverse stock split does not sufficiently demonstrate that Biocept's statements omitted crucial information, such that their statements were material misrepresentations. (TAC at 15.)

14

The TAC also fails to sufficiently plead a material misrepresentation based on allegations related to Biocept's press releases. The TAC does not sufficiently allege that Biocept Defendants were the "makers" of these statements, *Janus*, 564 U.S. at 141, based on its conclusory allegations that, for example, Biocept Defendants "decided to put out an unlawful and misleading press release" or that Biocept Defendants "knew the . . . press release would . . . pump the stock price higher." (TAC at 35–36; *see also* ECF No. 163 at 27 (dismissing equivalent claims in the SAC for the same reason).) The TAC does not plead facts that "plausibly suggest" that Biocept Defendants "were the 'makers' of the press release statements under *Janus*" by virtue of their corporate positions alone. *Mandalevy*, 2021 WL 794275 at *6.

The allegations in the TAC related to Biocept's failure to attach its agreement with Aegea in its SEC filings, including in its Form 8-K, also fail to plead a material misrepresentation. (TAC at 45.) Plaintiff contends that Biocept's omission of the agreement from its SEC filings constitutes a *prima facie* violation of the Securities Exchange Act but 17 C.F.R. § 240.13a-11(c) explicitly provides that "[n]o failure to file a report on Form 8–K that is required solely pursuant to Item 1.01 . . . of Form 8-K shall be deemed to be a violation of 15 U.S.C. [§] 78j(b) and § 240.10b–5 [Section 10(b)]." 17 C.F.R. § 240.13a-11(c); *see also* ECF No. 163 at 29 (stating the same in the Court's dismissal of the equivalent claim in the SAC). Item 1.01 of Form 8-K pertains to an entity's disclosure of "entry into a material definitive agreement." *See* U.S. Sec. & Exch. Comm'n, Form 8-K at 7, https://www.sec.gov/about/forms/form8-k.pdf (last visited Nov. 13, 2025). Biocept's failure to disclose its agreement with Aegea in a Form 8-K cannot alone constitute a violation of Section 10(b). *See Takata v. Riot Blockchain, Inc.*, No. 18-2293 (GC) (RLS), 2023 WL 7133219, at *9 (D.N.J. Aug. 25, 2023) (reasoning that the plaintiff "cannot allege that the failure to comply with Item 1.01(a) is, standing alone, sufficient to state a claim under Section 10(b) and Rule 10b–5" (quoting *In re Bank of Am. Corp. Sec., Derivative & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MD 2058(PKC), 2011 WL 3211472, at *10 (S.D.N.Y. July 29, 2011))).

15

23-cv-1803-WQH-BLM

The allegations in the TAC related to Biocept's failure to announce its agreement with Aegea in other contexts, including press releases, and the omission of particular details related to the agreement in the August 6, 2020 press release likewise fail to plead a material misrepresentation. (TAC at 20, 24, 35–37.) Plaintiff does not sufficiently allege that the omission of information pertaining to the agreement with Aegea constitutes an "actionable misleading omission" under Section 10(b). *Khoja*, 498 F. Supp. 3d at 1311. The TAC alleges, for example, that Biocept's failure to include information about the Right of First Refusal provision in its agreement with Aegea "significantly minimized" the value of the agreement and rendered the press release misleading to the investing public. (TAC at 40.) The Court does not find that such conclusory allegations about the effect of undisclosed information are sufficient to plead that Biocept's public statements created an affirmative obligation to disclose additional details, including the Right of First Refusal Provision, to ensure that its statements were "not misleading" within the meaning of Section 10(b). *Macquarie Infrastructure Corp.*, 601 U.S. at 258.

The Court finds that Plaintiff's claims under the Securities Exchange Act and Rule 10b-5 are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), and that the TAC fails to satisfy this heightened pleading standard with respect to the first requirement of a claim under § 10(b) of the Securities Exchange Act: the existence of a material misrepresentation or omission. Accordingly, Plaintiff's claims under the Securities Exchange Act and Rule 10b-5 against Biocept Defendants are dismissed for failure to state a claim.

## 2. Fraud, Deceit, and Constructive Fraud

Plaintiff asserts three causes of action under California law—common law fraud, deceit, and constructive fraud—that allege fraudulent acts or omissions by Biocept Defendants. For each of these causes of action, Plaintiff contends that Biocept Defendants' fraudulent conduct includes "concealing" its agreement with Aegea, "obtaining shareholder approval for a reverse [stock] split," and executing the reverse stock split.

16

(TAC at 58–60.) These fraud claims rely on the same factual allegations that give rise to Plaintiff's claims under the Securities Exchange Act. *Compare id.* at 57 *with id.* at 58–60.

Common law fraud, under California law, requires that a plaintiff establish "(1) a misrepresentation of a material fact (false representation, concealment, or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Perez v. Bank of Am., N.A.*, No. 21-CV-01977-BAS-AHG, 2022 WL 3718835, at *3 (S.D. Cal. Aug. 26, 2022) (citing *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 259 (Ct. App. 2011)). "[T]he elements of a cause of action for fraud based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Kaldenbach v. Mut. of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 850 (Ct. App. 2009) (quotations and citations omitted).

Deceit, under California law, requires Plaintiff to establish that another person willfully suggested or asserted an untrue fact, suppressed a fact despite a duty to disclose it, or made a promise without intending to perform it. *See* Cal. Civ. Code §§1709–1710; *Hayes v. Scherer*, No. 821CV00389SSSADSX, 2023 WL 5507072, at *5 (C.D. Cal. July 3, 2023).

Constructive fraud "is a unique species of fraud applicable only to a fiduciary or confidential relationship" that requires an "act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another even though the conduct is not otherwise fraudulent." *Salahutdin v. Valley of Cal., Inc.*, 24 Cal. App. 4th 555, 562 (Ct. App. 1994) (emphasis omitted) (citation omitted); *see* Cal. Civ. Code § 1573 ("Constructive fraud consists . . . [of] any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault . . . ."). To succeed on

a constructive fraud claim, a plaintiff must show: (1) the existence of a fiduciary or confidential relationship; (2) nondisclosure; (3) reliance; and (4) resulting injury. *Younan v. Equifax Inc.*, 111 Cal. App. 3d 498, 516 (Ct. App. 1980).

Each of these claims requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As discussed, Rule 9(b) requires that the claimant allege "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). The claimant may not "lump multiple defendants together" without identifying the role that each played in the alleged fraud. *Id.* "In a fraud action against a corporation, a plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" *Santana v. BSI Fin. Servs., Inc.*, 495 F. Supp. 3d 926, 947 (S.D. Cal. 2020) (quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 157 (Ct. App. 1991)).

The Court finds that the TAC fails to plead the alleged fraud with the particularity required by Rule 9(b). (*See* ECF No. 163 at 57 (dismissing fraud claims in the SAC for the same reason).) Plaintiff alleges that Biocept Defendants were "active in all the violations . . . that caused [his] losses," including "Biocept's 2020 proxy," "supplements and press release[s] dedicated to the proxy," and the "agreement with Aegea to co-develop a novel highly sensitive COVID-19 test." (TAC at 14.) Plaintiff's fraud claims in the TAC do not sufficiently identify the "who, what, when, where, and how" of the purported fraud. *Davidson*, 889 F.3d at 964. It is insufficient to label the fraud allegations with conclusory or general language. (*See, e.g.*, TAC at 6 ("unlawfully withheld disclosing the agreement"); *id.* at 14 ("active in all the violations"); *id.* ("knowingly signed"); *id.* at 37 ("knew that the . . . press release was unlawful").) It remains unclear the specific roles that each Biocept Defendant played with respect to allegedly fraudulent conduct, except for signing statements filed with the SEC, and it remains unclear the precise basis on which Plaintiff

contends that their statements or omissions are fraudulent. (TAC at 21.) The Ninth Circuit has stated: "[t]he time, place, and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not 'constitute' fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1451, 1457–58 (9th Cir. 1994) (en banc) (superseded in part on other grounds by statute). The TAC fails to plead with particularity the falsity of statements and omissions by Biocept Defendants.

The TAC likewise fails to sufficiently plead that Biocept Defendants acted with an intent to defraud the investing public. "[I]ntent to defraud is a question of fact to be determined from all the facts and circumstances of the case." *Buck v. Superior* Court, 232 Cal. Ap. 2d 153, 161 (Ct. App. 1965). As described above, the TAC states a conclusory allegation Biocept Defendants hid the "primary reason" for the company's reverse stock split—the issuance of additional, authorized shares—but also alleges that proxy filings described generating "interest in [Biocept] among investors" and providing a "broader market for [Biocept's] common stock." (TAC at 15–16.) The alleged conduct, taken as a whole, does not support an inference that Biocept Defendants acted intentionally to hide the purposes or effects of their reverse stock split. The TAC alleges that Biocept Defendants communicated multiple purposes for the reverse stock split and does not sufficiently plead that those statements were made with the intention to obfuscate the principal, fraudulent purpose. Accordingly, Plaintiff fails to plead the willfulness prongs of his fraud and deceit claims.

The Court finds that Plaintiff fails to meet the heightened pleading standard for his fraud, constructive fraud, and deceit claims. Accordingly, these claims are dismissed for failure to state a claim under Rule 12(b)(6).

### 3. California Corporations Code

Plaintiff asserts two causes of action under the California Corporation Code against Biocept Defendants. With respect to these claims, Plaintiff identifies the same allegedly

fraudulent conduct as the fraud claims discussed above: concealing Biocept's agreement with Aegea and executing the reverse stock split. (TAC at 60.)

Under California law, it is unlawful for any person in the state to induce another to purchase a security by making "any statement which was, at the time and in light of the circumstances under which it was made, false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements made . . . not misleading." Cal. Corp. Code § 25400(d). This portion of the California Corporations Code is "derived from substantially identical language in the Securities Exchange Act." *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 401, 405 (9th Cir. 2021) (citing *Kamen v. Lindly*, 94 Cal. App. 4th 197, 202–03 (Ct. App. 2001)). Under California law, it is also unlawful for any person in the state to buy or sell a security "by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in light of the circumstances under which the statements were made, not misleading." Cal. Corp. Code § 25401.

The particularity requirements of Federal Rule of Civil Procedure 9(b) similarly apply to these state law causes of action. *Vess*, 317 F.3d at 1103; *Lantz Ret. Invs., LLC v. Glover*, No. 22-15171, 2023 WL 3533892, at *1 (9th Cir. May 18, 2023). As described above, the Court finds that the TAC does not meet the pleading standard required by Rule 9(b) with respect to the purportedly fraudulent conduct by Biocept Defendants. Plaintiff fails to sufficiently plead these claims under the California Corporations Code for the same reason that he fails to plead his state law fraud claims. Accordingly, the Court dismisses these claims under the California Corporations Code for failure to state a claim.

/ / /

/ / /

/ / /

/ / /

/ / /

23-cv-1803-WQH-BLM

### 4. Breach of Fiduciary Duties

Under California and Delaware law,[10] a claim for breach of fiduciary duty requires that the plaintiff show the existence of a fiduciary relationship, a breach of that relationship, and damage proximately caused by that breach. *Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1101 (Ct. App. 1991); *Est. of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011).

In its Order dismissing Plaintiff's SAC, the Court cautioned Plaintiff that his then-proposed TAC did not "specify which fiduciary duties were allegedly breached." (ECF No. 163 at 66 n.37). The TAC, as filed, contends that Biocept Defendants breached their fiduciary duties by "[c]oncealing" the agreement between Biocept and Aegea and "[f]raudulently" executing the reverse stock split but fails to allege which duties were violated by these actions. *Id.* at 61. These claims rely on the same allegedly fraudulent conduct described above. As above, the TAC does not contain sufficient factual matter to state a claim that Biocept Defendants concealed information in a manner that would constitute a breach of their duties of care, loyalty, or good faith. Accordingly, the Court dismisses claims for breach of fiduciary duties for failure to state a claim.

### C. Non-Biocept Defendants

Plaintiff asserts two causes of action against Non-Biocept Defendants: (1) violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5 as "secondary actors"; and (2) aiding and abetting fraud. (TAC at 58–61.)

With respect to the Securities Exchange Act claim, Non-Biocept Defendants respond that dismissal is appropriate because Plaintiff fails to adequately plead that they made any material misstatements or omissions. (ECF Nos. 167-1 at 18; 175-1 at 19; 177-1 at 11; 180 at 9; 181-1 at 12.) With respect to the fraud claim, Non-Biocept Defendants also respond

---

[10] Defendants Gerhardt and Huebner contend that "Delaware law applies to Plaintiff's claims for breach of fiduciary duty" because "Biocept is a Delaware corporation." (ECF No. 176-1 at 16 (citing *EpicentRX, Inc. v. Bianco*, No. 21-cv-1950-MMA-DDL, 2024 WL 56995, at *17 (S.D. Cal. Jan. 4, 2024)).) Because Plaintiff's claim fails under both California and Delaware law, the Court does not decide at this stage of the proceedings which state's law applies.

that Plaintiff fails to meet the pleading standard required by Federal Rule of Civil Procedure 9. (ECF Nos. 167-1 at 22; 175-1 at 24; 178-1 at 9; 180 at 15; 181-1 at 28.)

### 1. Securities Exchange Act Claims

Only the "maker" of an "untrue statement of a material fact" can be held liable under Section 10(b) and Rule 10b–5. *Janus*, 564 U.S. at 141. "One who prepares or publishes a statement on behalf of another is not its maker." *Id.* at 142. The Ninth Circuit held that a plaintiff's claims failed to meet the *Janus* standard where the defendant did not bear "a statutory obligation to file with the SEC" and "there [was] no allegation that [the defendant] made the filings and falsely attributed them to the [filing defendant]" or that the defendant "had ultimate authority over the [filing defendant's] SEC filings." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 693 n.8 (9th Cir. 2011).

The TAC does not contain any allegations that Non-Biocept Defendants themselves made any misrepresentations or omissions; instead, it refers to Biocept's filings with the SEC and to Biocept's press releases and attributes "secondary" liability to Non-Biocept Defendants. (*See, e.g.*, TAC at 15, 26, 32, 35.) The TAC alleges only that Non-Biocept Defendants offered support as other actors filed or published these statements: Non-Biocept Defendants "reviewed, edited and approved" misleading statements, "offer[ed] substantial assistance," "turned a blind eye" or "stood silent" despite knowledge of misleading statements, or—more generally—"had a history of playing fast and loose." (TAC at 18, 25, 34, 49.) These allegations are insufficient to allege that Non-Biocept Defendants had ultimate authority over the statements. *Mandalevy*, 2021 WL 794275 at *6 ("[A] plaintiff must plead sufficient facts to show that the defendant had the power and authority to control the content and issuance of the statement."); *see also* ECF No. 163 at 23–24 (dismissing Plaintiff's equivalent claims in the SAC because the "alleged misrepresentations" are exclusively related to "Biocept's reports and SEC filings, as well as statements made by Biocept directors"). The TAC fails to sufficiently allege that the Non-Biocept Defendants were the "makers" of the alleged misrepresentations or omissions

and, accordingly, fails to state a claim under the Securities Exchange Act and Rule 10b-5 against Non-Biocept Defendants.

### 2. Aiding and Abetting Fraud

Under California law, a defendant may be held liable for aiding and abetting "the commission of an intentional tort if the person [] knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Impac Funding Corp. v. Endresen*, No. SACV 15-588-JLS (JCGx), 2015 WL 13916649, at *2 (C.D. Cal. Dec. 16, 2015) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1118 (C.D. Cal. 2003)). "The substantial assistance standard 'requires that the defendant's actions be a "substantial factor" in causing the plaintiff's injury.'" *Tan v. Quick Box, LLC*, No. 20cv1082-LL-DDL, 2024 WL 1121795, at *6 (S.D. Cal. Mar. 14, 2024) (quoting *Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011)). Rule 9(b)'s heightened pleading standard applies to an aiding and abetting fraud claim, meaning "substantial assistance must be pleaded with particularity, while actual knowledge may be averred generally." *Axonic Cap. LLC v. Gateway One Lending & Fin., LLC*, No. CV 18-5127 PSG (SSx), 2018 WL 11355034, at *17 (C.D. Cal. Dec. 18, 2018).

Plaintiff's aiding and abetting fraud claims fail because, as explained above, the TAC does not sufficiently allege the underlying fraud claim. *See In re McKinsey & Co., Inc. v. Nat'l Prescription Opiate Litig.*, No. 3084 CRB, 2024 WL 2261926, at *15 (N.D. Cal. May 16, 2024) ("Plaintiffs have failed to adequately plead underlying fraud-based claims, so the claim for aiding and abetting fraud is due to be dismissed."); *Shepardson v. U.S. Bank Trust Nat'l Ass'n ex rel. Bungalow Series IV Tr.*, No. 23-cv-05497-NC; 2024 WL 3304800, at *8 (N.D. Cal. July 3, 2024) ("Because the Court has concluded all of Plaintiff's other claims, on which the claim for aiding and abetting is based, fail to state [a] claim, Plaintiff's aiding and abetting claim necessarily fails."); *Sec. & Exch. Comm'n v. Miller*, No. CV 17-00897 CBM, 2017 WL 5891050, at *7 (C.D. Cal. Nov. 15, 2017) ("Because the complaint's allegations of the primary violation are deficient, the complaint

fails to state a cause of action for aiding and abetting the primary violation."). Accordingly, the Court dismisses the claims for aiding and abetting fraud for failure to state a claim.

### D. Leave to Amend

Defendants request that the Court deny Plaintiff leave to amend the TAC. (ECF Nos. 167-1 at 33; 176-1 at 33; 183-1 at 27.) To date, Plaintiff has revised his allegations in three filings: the First Amended Complaint (ECF No. 4), the Second Amended Complaint (ECF No. 84), and the Third Amended Complaint. (ECF No. 164.)

Courts should "freely give leave [to amend] when justice so requires" but may choose to exercise their discretion to deny further amendment in limited circumstances. *Carrico v. City and Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011) (quoting Fed. R. Civ. P. 15(a)(2)). Courts should consider the *Foman* factors, as described by the U.S. Supreme Court, when determining whether to grant leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). "[I]t is consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

The Court finds that the *Foman* factors militate in favor of denying Plaintiff the opportunity to file a Fourth Amended Complaint in this action. The Court finds that the first two factors—undue delay and bad faith—favor granting leave to amend because Plaintiff has diligently pursued his claims and has filed pleadings in a timely manner. The three remaining factors, however, urge the denial of further leave to amend. Plaintiff has amended his Complaint three times, including once in response to multiple motions to dismiss and another time in response to the Order identifying the deficiencies in the SAC. The similar deficiencies now identified in the TAC indicate that Plaintiff is unable to adequately plead his claims, even with the benefit of additional amendment. *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1017 (9th Cir. 1999) (holding that the district court

did not abuse its discretion to deny amendment after the plaintiff had "twice before amended its complaint"). The large number of parties in this case, including those Non-Biocept Defendants with attenuated relationships to the alleged fraud, also increases the risk of prejudice to opposing parties through further amendment. The Court cautioned Plaintiff that, if the TAC failed to cure the deficiencies identified in the previous dismissal, it might deny him further leave to amend. (ECF No. 163 at 70 n.40.) In light of the persistent deficiencies in the TAC, the Court now does so.

## IV.    CONCLUSION

IT IS HEREBY ORDERED that the Motions to Dismiss (ECF Nos. ECF Nos. 167, 175, 176, 177, 178, 180, 181, 183) are granted. Plaintiff's Third Amended Complaint (ECF No. 164) is dismissed without leave to amend as to all Defendants except for Biocept, Inc.

Dated: December 19, 2025

*William Q. Hayes*
Hon. William Q. Hayes
United States District Court

23-cv-1803-WQH-BLM